# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

ALLMERICA FINANCIAL BENEFIT INSURANCE CO. and
MASSACHUSETTS BAY INSURANCE CO.,

    Plaintiffs,

  v.                                                                 Docket No. 2:17-cv-02545 JPM cgc

EAGLE SALES COMPANY, INC.,
JAMES LOWERY and SHERRY SANDERS,
as parents and next of kin of REED G. LOWERY,
deceased, WILLIAM BLAKE KOBECK,
WILLIAM MARK KOBECK, KIMBERLY
KOBECK, CAROLYN KOBECK, and
CLAY & LAND INSURANCE, INC.,

    Defendants.

_____

## ORDER DENYING MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
_____

Before the Court is Plaintiffs' Allmerica Financial Benefit Insurance Co. ("Allmerica") and Massachusetts Bay Insurance Co.'s ("Mass Bay") (collectively, "Plaintiffs") Motion to Certify Order for Interlocutory Appeal, filed on January 25, 2021. (ECF No. 207.) Also before the Court is Defendant Clay & Land Insurance, Inc.'s ("Clay & Land") Motion to Join Plaintiffs' Motion to Certify Order for Interlocutory Appeal, filed on February 4, 2021. (ECF No. 209.) For the reasons set forth below, Plaintiffs' Motion is **DENIED**.

### I.    BACKGROUND

On January 14, 2021, the Court issued its Order Granting in Part and Denying in Part Plaintiffs' and Defendants' Motions for Summary Judgment. ("Summary Judgment Order," ECF No. 206.) The factual background as set forth in detail in the Summary Judgment Order is

incorporated herein.  On January 25, 2021, Plaintiffs filed a Motion to Certify Order for Interlocutory Appeal.  (ECF No. 207.)  On February 4, 2021, Defendant Clay & Land joined Plaintiffs' Motion to Certify Order for Interlocutory Appeal.  (ECF No. 209.)  Defendants James Lowery and Sherry Sanders filed a Response and Memorandum in Opposition to Plaintiffs' motion on February 8, 2021.  (ECF No. 210.)  Plaintiffs filed their Reply to Defendants' Response on February 24, 2021.  (ECF No. 213.)  On March 11, 2021, Defendants filed a Sur-reply Memorandum in Further Opposition to Plaintiffs' motion.  (ECF No. 216.)

## II.     LEGAL STANDARD

28 U.S.C. § 1292(b) provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292 (b)

Under 28 U.S.C. § 1292(b), a district court, in "its discretion may permit an appeal to be taken from an order certified for interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." W. Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis (In re City of Memphis), 293 F.3d 345, 350 (6th Cir. 2002).  "Review under § 1292(b) is granted sparingly and only in exceptional cases." Id. at 350; see also Kraus v. Bd. of County Rd. Comm'rs, 364 F.2d 919, 922 (6th Cir. 1966.)

"A legal issue is a controlling question of law if it could materially affect the outcome of a case." In re City of Memphis, 293 F.3d at 351.  Appellate courts have narrowed this definition to

apply only to "pure questions of law" where a ruling can be made "without having to delve beyond the surface of the record in order to determine the facts." See, e.g., McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1259 (11th Cir. 2004); Arenholz v. Bd. of Trs. Of Univ. of Illinois, 219 F.3d 674, 676–677 (7th Cir. 2000) ("We think 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact."). "[I]f the issues on appeal are 'purely legal' and if 'this court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue,' 'then there is an issue over which this court has jurisdiction.'" Barry v. O'Grady, 895 F.3d 440, 443 (6th Cir. 2018) (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310 (6th Cir. 2005)). However, if the defendant's argument relies on disputed facts, the Court "[h]as no jurisdiction to hear the appeal." Id. at 443.

"'A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.'" In re Trump, 874 F.3d 948, 952 (6th Cir. 2017) (quoting Reese v. BP Exploration, Inc., 643 F.3d 681, 688 (9th Cir. 2011)). "District courts in this circuit have interpreted 'a substantial ground for difference of opinion … regarding the correctness of the decision' to mean when '(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.'" In re Miedzianowski,

735 F.3d 383, 384 (6th Cir. 2013) (citation omitted). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010).

Finally, "[i]f the litigation will be conducted in substantially the same manner regardless of the decision on appeal, an appeal will not materially advance the termination of the case." In re Project Veritas, 2019 WL 4667711, at *1 (6th Cir. 2019); see also White v. Nix, 43 F.3d 374, 378–379 (8th Cir. 1994) (internal citations omitted) ("When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination the litigation."). "Interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens" and "is most appropriate early in the proceedings." W. Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis, 138 F.Supp.2d 1015, 1026 (W.D. Tenn. 2000) (citations omitted).

### III.    ANALYSIS

Plaintiffs ask this Court to certify two issues for interlocutory appeal: 1) whether the "Exclusion of Named Driver" Endorsement (the "Exclusion") can be separately invalidated for lack of mutual assent without rescinding the entire Allmerica Business Auto Policy ("Allmerica Policy"); and 2) whether Eagle Sales "Borrowed" the subject Cadillac. (ECF No. 207.)

#### a.    The Exclusion does not Warrant Interlocutory Appeal

Plaintiffs begin by arguing that "[t]he Court's ruling appears to conflate the issue of whether or not a valid insurance contract was formed versus whether or not the provisions of an otherwise valid insurance contract were misrepresented by an insurance agent, thereby creating liability under Tenn. Code Ann. §56-6-115(b)." (ECF No. 207 at PageID 6176.)  Furthermore,

4

Plaintiffs argue that "the Court's ruling as to mutual assent seems to suggest that the 'Exclusion of Named Driver Endorsement' was an independent contract separate and apart from the Allmerica [Policy] and that the failure of 'meeting of the minds' could render this one provision invalid while the rest of the Policy remains in effect." (Id.)

Plaintiffs misrepresent and mischaracterize the Court's ruling in order to relitigate this issue. Plaintiffs present the Court's ruling as one rescinding a portion of the Allmerica Policy. (Id. at PageID 6175.) In its Summary Judgment Order, the Court emphasized key factual considerations as to whether the parties ever agreed to the inclusion of the Endorsement in the first place. The Court's Summary Judgment Order did not purport to rescind any provision of the Allmerica Policy, but instead noted that key factual disputes prevented summary judgment, including that: 1) there is no signed version of the Exclusion; 2) Mark Kobeck ("Mr. Kobeck") disputes that he ever received the Exclusion; and 3) Defendants assert that Michael Henry ("Henry") made certain representations that would prevent enforceability of the Exclusion. (Summary Judgment Order, ECF No. 206 at PageID 6141–42.) The Court further pointed out that the parties' disputed the relevance and circumstances underlying Blake Kobeck's ("Blake") exclusion from the Allmerica Policy, and the fact that Plaintiffs did require a signature on the Exclusion for the renewal of the Allmerica Policy for 2017-2018. (Id. at PageID 6153.)

To support their position, Plaintiffs cite to a footnote in an unpublished opinion from the intermediate appellate court in Tennessee. (ECF No. 207 at PageID 6178 (citing Rogers v. State Volunteer Mut. Ins. Co., C.A. No. M2007-01599-COA-R3-CV, 2008 WL 1931531, at *3 n.4 (Tenn. Ct. App. May 2, 2008). The Court is not convinced by Plaintiffs' citation to Rogers. In Rogers, a physician brought a declaratory judgment action seeking to rescind an endorsement based on a mutual mistake of fact that "Dr. Rogers was covered under another medical malpractice

5

policy with medical Protective." Rogers, 2008 WL 1931531, at *2.  Importantly, there was **no dispute** that the parties agreed to the endorsement at issue in Rogers.  Id. (emphasis added).

Plaintiffs further appear to be arguing that the Exclusion is not severable from the remainder of the Allmerica Policy, but have cited **no** authority to support this contention.  (ECF No. 207 at PageID 6178.)  In fact, the Supreme Court of Tennessee has evaluated endorsements to auto policies similar to the Exclusion at issue as separable contracts so long as the endorsements are based in sufficient consideration.  See Johnson v. Cent. Nat. Ins. Co. of Omaha, Neb., 356 S.W.2d 277, 281 (Tenn. 1962) ("The record in the case before us shows that the rate classification did not take into consideration that persons under the age of twenty-five years would be permitted to drive the Lincoln automobile, and when this fact was brought to the attention of the Insurance Company the **agent called upon the insured and asked him to sign the exclusion endorsement which he did freely and voluntarily**.  The stipulation is that had the insured not signed the endorsement, the right of cancellation on the part of the defendant, Insurance Company, would have been exercised." (emphasis added)); see also Northland Ins. Co. v. Shady Oaks Sch., Inc., C.A. No. 02A01-9405-CV-00109, 1995 WL 258956, at *2 ("The policy at issue provided that Plaintiffs could unilaterally cancel by giving thirty days written notice.  Plaintiffs' manager stated in an affidavit that the policy would have been cancelled if Defendant had refused to accept the endorsement.  Therefore, the fact that Plaintiffs forbode cancelling the policy when the endorsement was signed serves as adequate consideration under Johnson.)

Here, at the very least, there is a factual dispute as to whether there was sufficient consideration and whether the Defendants had any intent to be bound by the Exclusion.  Plaintiffs' attempt to reinvent the Court's ruling as a "rescission" is therefore misplaced and accordingly, the applicability of the Exclusion in this case does not involve a controlling question of law as required

by § 1292(b).  As stated by the 11th Circuit, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular question."  McFarlin, 381 F.3d at 1251.  This Court has further disfavored certification of interlocutory appeal where a ruling cannot be made "without the appellate court delving into the record."  Miller v. Uchendu, 2015 WL 7709414, at *2 (W.D. Tenn. 2015).

Furthermore, the Court finds that there is no "substantial ground for difference of opinion," which it has found to exist when: "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue."  In re Regions Morgan Keegan ERISA Litigation, 741 F.Supp.2d 844, 849 (W.D. Tenn. 2010).  Plaintiffs have not cited to cases that suggest that any of the three provisions of this prong apply.  Finally, Plaintiffs have failed to show that certifying this issue for appeal would do anything but further delay this litigation.  This case has been the subject of substantial delay due to the complex nature of insurance litigation as well as external factors such as the health of counsel and the ongoing COVID-19 pandemic.  No benefit to the parties is achieved by further delaying the adjudication of the claims.  Accordingly, Plaintiffs' motion is **DENIED** with respect to the Exclusion.

### b. The Question of Whether Eagle Sales "Borrowed" the Subject Cadillac does not Warrant Interlocutory Appeal

Next, Plaintiffs take issue with the Court's findings regarding the use of the term "borrow" within the Allmerica Policy.  (ECF No. 207 at PageID 6179.)  In the Summary Judgment Order, the Court addressed Plaintiffs' argument that Eagle Sales did not borrow the Cadillac at the time of the accident, and concluded that "[t]he Allmerica Policy does not say that Eagle Sales needed to be *borrowing* the Cadillac at a specific moment for this provision to apply."  (ECF No. 206 at PageID 6157 (emphasis in original).)  The Court only addresses the arguments presented to it.  The

7

*entirety* of Plaintiffs' summary judgment briefing on the issue of the term "borrow" is shown below:

> Additionally, at the time of the subject accident, Blake Kobeck's use of the Cadillac CTS-V was 'purely personal' and not for any business purpose on behalf of Eagle Sales. (SUMF, ¶¶ 38, 62.) Thus, Eagle Sales had no incentive to 'borrow' the vehicle from Mark Kobeck so that Blake Kobeck could use it for non-business purposes, and there is no proof that otherwise indicates that Eagle Sales had 'borrowed' the 2014 Cadillac CTS-V on the night of the accident. (SUMF, ¶ 62.)

ECF No. 177-1 at PageID 3300.

As summarized by Defendants, "Plaintiffs contend that Eagle Sales had to be borrowing the vehicle at the exact time of the accident in order for there to be coverage. They take this position despite the lack of any language in the entire policy that sets forth that requirement" and "cite no authority which sets forth that requirement." (ECF No. 210 at PageID 6196.) Now, Plaintiffs cite to Selective Ins. Co. of S.C. v. Sullivan, 694 F. App'x 379 (6th Cir. 2017) as a "Kentucky case involving identical policy language and nearly identical facts as the present case[.]" (ECF No. 207 at PageID 6181.)

The facts in Sullivan were similar, but distinguishable from the case before the Court. There, the owners of a 1999 Mercedes, Curtis and Sharon Sullivan (the "Sullivans"), owned a meatpacking company, Omni Custom Meats, Inc. ("Omni"). Sullivan, 694 F. App'x at 381. Davida Sullivan, the daughter of the Sullivans, was in an automobile accident in 2011 while driving the 1999 Mercedes, which was listed on an insurance policy issued by Selective Insurance Company of South Carolina ("Selective"). Id. On appeal, the Sixth Circuit considered "whether the named insured, Omni, 'borrow[ed]' the Mercedes from its owners, Curtis and Sharon Sullivan (Davida's parents), as that term [was] used in the policy." Id. As of 2007, the Sullivans allowed their company, Omni, to use the Mercedes for "business purposes." Id. Davida began working for Omni in 2001, but mostly worked from home in California, and was given permission to use

8

the Mercedes beginning in 2009.  Id.  As of January 2011, **Davida stopped working for the company and was provided a severance package**.  Id. (emphasis added).  However, between January and May 2011, Davida continued driving the Mercedes with Omni's permission.  The insurance policy at issue included a "Who is an Insured" section identical to the one in this case, including the provision that "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow…"  Id. at 381–382.

The Sixth Circuit analyzed the question of whether Omni borrowed the Mercedes from the Sullivans under four different definitions of borrow, including dictionary definitions and analysis of other circuit court decisions.  Id. at 383–386.  For one, the Sixth Circuit found that "even if use of the Mercedes as part of Davida's severance package was a business purpose, the fact that the package was indefinite defeats the idea that Omni 'borrowed' the Mercedes for this purpose."  Id. at 384 (citation omitted).

The court in Sullivan also considered that "borrow" could mean to "exercise dominion and control" over the vehicle; alternatively, to "borrow" could mean "not only that one receives the benefit of the borrowed object's use, but also that the borrower receives temporary possession, dominion, or control of the use of the thing."  Id. at 384.  (citations and quotations omitted).  Ultimately, the Sixth Circuit found that "Omni did not have 'temporary possession, dominion, or control of the use of' the Mercedes at the time of the accident" for multiple reasons, including that:

> Omni is headquartered in Kentucky, while Davida's use of the Mercedes occurred entirely in California.  Davida was using the Mercedes as her personal vehicle.  Davida was no longer employed by Omni at the time of the accident.  Instead, she had started her own clothing and jewelry business at that point.  And no record evidence suggests that the severance package included any terms limiting her use of the Mercedes, or any terms allowing Omni to demand the return of the vehicle.  Blake's argument that Omni remained in 'constructive control' of the vehicle and had the 'right to direct the use of the vehicle' is therefore unpersuasive."

Sullivan, 694 F. App'x at 385.

The Sixth Circuit's decision in Sullivan hinged on key facts, as listed above. As stated previously, "[c]ourts have the discretion to grant interlocutory appeals but must do sparingly and only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." Miller, 2015 WL 7709414, at *2 (citing In re City of Memphis, 293 F.3d at 351). "Exceptional" circumstances require the moving party to prove three elements: "1) the order involves a controlling question of law; 2) there is substantial ground for difference of opinion; and 3) an immediate appeal may materially advance the ultimate termination of litigation." Id. (citing 28 U.S.C. § 1292(b) and In re City of Memphis, 293 F.3d at 350).

The issue raised by Plaintiffs does not involve a controlling question of law, which "[a]ppellate courts have narrowed [] to apply only to 'pure questions of law' where a ruling can be made without the appellate court delving into the record." Id. (citing Arenholz, 219 F.3d 674, 676–677). As noted by Defendants, "each of the definitions of 'borrowed' that Plaintiffs present…require a thorough analysis of the facts in the record to determine, for example, whether Eagle Sales exercised dominion or control over the vehicle or whether Eagle Sales benefitted from the use of the vehicle." (ECF No. 210 at PageID 6198–99.) The Sixth Circuit's analysis in Sullivan confirms that a lengthy and detailed analysis of the factual record would be necessary to make such a determination. Because § 1292(b) requires all three prongs to be met, Plaintiffs motion for interlocutory appeal is **DENIED** as to whether Eagle Sales "borrowed" the Cadillac.

The Court nevertheless addresses each of Plaintiffs' arguments for the sake of completeness. Plaintiffs argue that "a substantial ground for difference of opinion existing with respect to the question of whether Eagle Sales 'borrowed' the Cadillac as contemplated under Section II(A)(1)[.]" (ECF No. 207 at PageID 6182–83.) Here, the Court finds that this prong is satisfied because whether a party has "borrowed" a vehicle is "difficult, novel, and either a

10

question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions[.]" In re Miedzianowski, 735 F.3d at 384. Besides pointing to Sullivan, Plaintiffs have not provided, and the Court has not found, substantial guidance or briefing on the definition of "borrow" in insurance contracts. Furthermore, the cases cited by the Sixth Circuit in Sullivan suggest a multitude of approaches and definitions, all of which could be applicable in the current case. See, e.g., Sullivan, 694 F. App'x at 383–384. Accordingly, the Court agrees there is a substantial ground for difference of opinion on whether Eagle Sales "borrowed" the Cadillac. Next, Plaintiffs argue that "immediate interlocutory appellate review will 'materially advance the ultimate termination of litigation' because "there would be no further analysis required with respect to the disputed issues of whether Blake Kobeck had implicit permission to use the Cadillac or whether Blake Kobeck was a member of the Kobeck household as contemplated under subsections II(A)(1)(b)(2) of the Allmerica Business Auto Policy." (ECF No. 207 at PageID 6183.) As noted by Defendants however, "Plaintiffs fail to point out that the Allmerica policy also contained a 'Business Auto Coverage Broadening Endorsement'" ("Broadening Endorsement"). (ECF No. 210 at PageID 6199.) The Broadening Endorsement provides coverage where: "Any employee of yours is an insured while using a covered auto you do not own, hire or borrow in your business or your personal affairs." (Id.) Defendants contend that this Broadening Endorsement "rendered Blake Kobeck an [*sic*] insured because he would have been driving a 'covered auto' Eagle Sales did 'not own, hire or borrow' in its business or personal affairs." (Id.) Plaintiffs argue that "Defendants['] [*sic*] interpretation is misplaced" and that "[t]he effect of this provision is that, for an Eagle Sales employee driving his or her own personal vehicle while in the course and scope of his or her employment for Eagle Sales, that employee would be considered an 'insured.'" (ECF No. 211-1 at PageID 6206.) Notably, the language and

11

interpretation of "business or personal affairs" relied upon by Plaintiffs appears nowhere in the Allmerica Policy, and neither does Plaintiffs' contention that the driver need be acting in the "course and scope" of employment.  Ultimately, the Court does not reach a resolution on this issue, but notes that certification for interlocutory appeal in fact raises additional issues in dispute, as opposed to materially advancing the litigation.  Because Plaintiffs have not satisfied the three requirements of § 1292(b), their motion is **DENIED**.

## IV.    CONCLUSION

For each of the reasons stated above, Plaintiffs' Motion to Certify Order for Interlocutory Appeal is **DENIED**.

IT IS SO ORDERED this 18th of March, 2021.

    _/s/ Jon P. McCalla__
JON P. McCALLA
UNITED STATES DISTRICT COURT